No. 55,954

WILLIAM G. SCHRAFT, *Appellant,* v. DAN LEIS, *et al., Appellees.*

(686 P.2d 865)

 

 Opinion filed
August 14, 1984. 

*Kenton D. Wirth,* of Wichita, argued the cause and was on the brief for the appellant.

*J. Michael Morris,* of Sargent, Klenda, Haag & Mitchell, of Wichita, argued the cause, and *Gary M. Austerman* and *John B. Morris,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action incident to the dissolution of a closely held corporation. William G. Schraft, a fifty percent shareholder, sued Dan Leis, the other fifty percent shareholder, who had been general manager of the corporation. Schraft alleged Leis received unauthorized salary and profit-sharing benefits, wrote checks after dissolution, and unfairly competed with the corporation. Schraft also sued the corporation for rent, damage to rental property, and indebtedness on a note. Leis counterclaimed for supervised dissolution of the corporation, tortious interference by Schraft with the corporation's business, and use of corporate property for personal benefit.

Continental Structures, Inc., was formed in March 1974, by appellant, William G. Schraft; appellee, Daniel Leis; and Roy Arnett. Each was a one-third shareholder. Arnett and Leis had been employees of a metal building construction company which had been a tenant of Schraft's. Continental Structures was to engage in the business of metal building construction and repair.

Since the alleged overpayment of salary to Leis is the major portion of this lawsuit, we will examine the salary arrangements in some detail. Prior to incorporation, the parties agreed Arnett and Leis would manage the business for which they would receive salaries. Their salaries were initially to be the same as Arnett and Leis had received from their prior employer, which was $300 and $200 per week respectively. Schraft was not involved in management, thus was to receive no salary.

After incorporation, each of the shareholders became a director and an officer. Arnett was elected president, Shraft vice-president, and Leis secretary-treasurer. The bylaws, as adopted, contained the following salary provisions:

"The Board of Directors, from time to time, as it may determine, shall have authority to appoint such superintendents, general managers or other managing officers as may be deemed necessary or advisable, and to fix the salaries thereof."

The minutes of the corporation also contain the following statement as to salary:

"The Board of Directors shall approve a salary . . . [for Arnett and Leis] consistent with his position and what the corporation can reasonably afford based on profits and expenses."

However, there was never a formal corporate resolution setting a specific salary for Arnett or Leis.

Beginning in 1974, the salaries of Arnett and Leis were increased without formal corporate action. By the end of 1974, Arnett had gone from $300 to $400 per week and Leis from $200 to $250, and then to $300 per week. On March 28, 1975, Arnett wrote a letter to Schraft wherein he apprised him of the salary increases. The letter stated:

"It was my understanding that as President of Continental Structures, Inc. . . . I would take a salary relevant to the position and what the business could afford, based on profits etc."

Schraft acknowledged receipt of the letter but did not discuss the salary matter with Arnett at that time.

The letter also referred to a "monthly computer cost analysis" which, according to Schraft, was subsequently discussed. Schraft desired the analysis so he could have a monthly operating statement for the business. He testified when the company was formed it was agreed the company's financial information would be placed in a computer and the parties would receive a monthly computer analysis. Arnett testified, in accordance with his letter, that he did not feel the expense of the computer was justified since the corporate books reflected the costs of doing business. He, therefore, terminated the reports.

Schraft testified he repeatedly requested a monthly "comprehensive cost analysis." Schraft claims the failure to provide such statements resulted in his not being aware of the salary increases. Schraft, however, admitted receiving various financial statements from Continental. He estimated that between 1974 and 1978 he received six or seven such statements. Arnett testified Continental's first accountants prepared such statements routinely on a quarterly and year-end basis as well as on demand. Such statements were delivered to all three shareholders. Arnett

also testified that from 1974 to 1976 Continental was a subchapter S corporation and copies of the corporate tax returns were delivered to the shareholders during these years. Schraft testified he did not see the returns until 1980.

The building leased by Continental for offices was owned by Schraft. Schraft's office was located in the same building. As a result, the books, records, and tax returns of Continental were readily available to Schraft. He testified he did not avail himself of the opportunity to view the company financial statements.

Schraft also admitted between 1974 and 1977 he did not talk to Continental's accountants. In 1977, Continental changed its accountant to Ray Eyman, who was recommended to the company by Schraft. Eyman had prepared Schraft's personal tax returns. Schraft testified he talked to Eyman from time to time and received verbal information from him about the company. From 1979 on, Eyman kept the corporate books at his home. Eyman also furnished financial statements to Schraft, as had the previous accountants.

In August 1978, Arnett was terminated as president and manager of the company because of a seventy thousand dollar loss for 1977. Schraft testified although he did not see the actual 1977 tax return until it was filed in 1981, Eyman furnished him with the figures from the front page of that return at the time of Arnett's termination. The first page of the 1977 return shows the compensation of the managing officers. It was, of course, in excess of the initial amounts agreed upon.

Arnett testified that some time after his termination in August and before November 1978, Schraft mentioned the matter of unauthorized salary. Arnett ignored the matter. Schraft denied that he learned of Arnett's salary at this time. In November 1978, the company agreed to buy Arnett's shares. After the buy-out, Schraft and Leis each became fifty percent shareholders.

Leis became president of the company. Schraft testified that after the meeting electing Leis president, Leis stated that he should receive the same salary Arnett had. Schraft made no reply. He explained his lack of response saying he did not want to discuss the matter at that time. He later assumed the subject was dropped since it was not brought up again. He never asked Leis about the salary and did not check the books of the company.

Schraft became treasurer of the company, as well as vice-president, when Leis became president. The duties of the treasurer specified in the bylaws were to "have custody of all money . . . of the corporation and . . . . keep regular books of account . . . ."

In November 1979, Leis and Schraft discussed a list of employees and proposed wages. At the conclusion Leis told Schraft he wanted an additional $150 per week, raising his salary to $650 per week. Schraft claims this is the first time he knew Leis was receiving a salary greater than the original $200 per week.

After the November 1979 meeting on salaries, the relationship between Schraft and Leis deteriorated. Their efforts to arrive at an agreement to buy or sell the company failed. In April 1980, Schraft filed the present action. At a special meeting of the board of directors, held August 14, 1980, it was agreed to dissolve the corporation. Various resolutions, incident to the dissolution, were adopted.

These resolutions were: (1) The corporation would proceed to pay off its liabilities; (2) the officers were directed to do all things necessary to dissolve the corporation; (3) all employees, except Delbert Story, were to be terminated at 5:00 p.m., August 15, 1980; (4) no distribution of assets to the shareholders would be made without mutual agreement; (5) the checking account would be changed to require two signatures on each check; (6) all officers were terminated immediately except to sign instruments necessary to liquidate and dissolve the corporation; and (7) all credit cards were cancelled.

The next day, on August 15, 1980, Leis signed payroll checks for the employees without Schraft's co-signature. Among these checks were three salary checks to himself, each in the amount of $429.96.

Following the resolution to dissolve the company, Leis formed a new company, Superior Structures, Inc. Schraft testified Superior did work on a building for a former client of Continental's, completing the work before August 26, 1980.

Trial was to the court. At the close of Schraft's case, the court dismissed the claims against Leis for unauthorized salary, unfair competition, and writing checks the day after dissolution. In addition, the court dismissed a portion of Schraft's claim for rent against Continental and dismissed other claims of which no

complaint is made on appeal. Leis had counterclaimed against Schraft for tortious interference with Continental's business and unauthorized use of corporate assets. At the close of Leis' evidence, the court dismissed the tortious interference claim and the unauthorized use claim except for Schraft's use of corporate credit cards after dissolution. The court made findings of fact and conclusions of law on the remaining issues. Schraft was awarded judgment against Continental of $3,300 for rent and $3,000 on a note. Continental was granted judgment against Schraft for $115.00 on the credit card claim. The court granted Leis' request for supervised dissolution of the company.

Schraft filed a motion to amend the judgment or for a new trial. The court denied the motion but made additional findings. Schraft appealed.

Appellant Schraft first argues the trial court erred in dismissing his claims for breach of fiduciary duty and unfair competition.

Schraft's principal claim in this case is that Leis received unauthorized salary in the amount of $75,000 from Continental Structures, Inc. He contends he had no knowledge prior to 1979 Leis' salary had been increased beyond the initial $200 per week. He maintains the payment of salary in excess of the original $200 constitutes breach of the corporate bylaws and Leis' fiduciary duty to the corporation and appellant individually.

Leis contends it was agreed prior to incorporation that he and Arnett would receive salaries in the same amount as they were receiving in their prior employment with salary increases allowed consistent with the condition of the company and services they performed. He acknowledges no formal board of directors action was taken to increase either his or Arnett's salaries. But appellee also contends there was an implied agreement to pay a reasonable salary for his work. He also argues Schraft had knowledge, actual and constructive, of the salary increases and failed to complain or take any action.

Appellant argues the corporate bylaws provide the board of directors is to set salaries and since no formal board action was ever taken to increase appellee's salary above the initial $200, all salary received above that amount is unauthorized.

The bylaws of a corporation are the rules of law for its government. The term "bylaw" may be further defined according to its

function, which is to prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs, and the rights and duties existing among the members. Bylaws are self-imposed rules, resulting from an agreement or contract between the corporation and its members to conduct the corporate business in a particular way. Until repealed, bylaws are the continuing rule for the government of the corporation and its officers. See 18 Am. Jur. 2d, Corporations § 168.

As previously stated, it is undisputed no formal board action was taken to set appellee's original salary despite the agreement between the parties that the board would approve all salaries. Rather, it was by informal agreement that it was initially set at the $200 level. Thus, Schraft ratified the setting of Leis' salary by a method other than that authorized by the corporate bylaws. It has been stated:

"Corporations have power to waive provisions of their bylaws introduced for the protection of the company, and they may do so expressly or impliedly. Also, corporate bylaws may be waived by a continued disregard thereof by the parties for whose benefit they were enacted." 18 Am. Jur. 2d, Corporations § 173, pp. 703-04.

See also 8 Fletcher, Cyclopedia of the law of Private Corporations § 4200, pp. 730-31 (rev. perm. ed. 1982). The use of the bylaws, therefore, was waived by both parties.

Appellant next argues appellee is to be held to the terms of his salary contract, regarding the amount of the salary and when it would be increased. For support appellant cites *Sweet v. Stormont Vail Regional Medical Center,* 231 Kan. 604, 647 P.2d 1274 (1982), and *Manhattan Buildings, Inc. v. Hurley,* 231 Kan. 20, 643 P.2d 87 (1982). Appellee does not dispute this. There is disagreement, however, as to the terms of the employment contract.

The trial court heard conflicting testimony as to the employment contract and found the parties had agreed salaries would be taken based on the condition of the company and services performed. Arnett testified at trial the salaries taken were consistent with that standard. Further, appellant admitted the $650 per week appellee requested in November 1979, was fair compensation for the work appellee performed. We have held where the trial court has made findings of fact and conclusions of law, the

scope of review on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. See *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976). The trial court's finding that the salary taken was fair for the work performed is supported by the evidence and must, therefore, be upheld.

The trial court fortified the foregoing finding by also finding there was an implied agreement appellee would receive a fair salary for his duties as a managing officer of the corporation. A director or officer of a corporation working as an operating manager has a claim for the value of his services even if there has been no resolution of the board of directors fixing his compensation. See 19 Am. Jur. 2d, Corporations § 1402, p. 795. See also *Sauberli v. Sledd,* 143 Kan. 350, 55 P.2d 415 (1936). Thus, in the absence of an express agreement as to the amount of his salary and the terms of increases in that salary, there was an implied contract to pay a fair and reasonable salary to appellee. The trial court properly found the salary received was fair and reasonable for the work performed.

It is undisputed Leis owed a fiduciary duty to the corporation and to Schraft. Thus, he owed Schraft the duty of full disclosure of corporate matters. See *Sampson v. Hunt,* 233 Kan. 572, 665 P.2d 743 (1983); *Newton v. Hornblower, Inc.,* 224 Kan. 506, 582 P.2d 1136 (1978). The trial court found this duty properly discharged as to the salary issue since appellant had both actual and constructive knowledge of the salary increase. The trial court's finding was supported by substantial competent evidence and will not be disturbed on appeal.

The trial court further found the appellant was barred from asserting the profit-sharing claim by estoppel, waiver, laches and ratification. These rulings are based on the finding that Schraft had signed the corporate minutes establishing and terminating the profit-sharing plan.

Estoppel involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations where it would be unconscionable to permit persons to maintain a position inconsistent with one in which they have already acquiesced. See *Harrin v. Brown Realty Co.,* 226 Kan. 453, 458-59, 602 P.2d 79 (1979).

Waiver implies a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. Waiver is consensual in nature but the intention may be inferred from conduct and the knowledge may be actual or constructive. See *Stratmann v. Stratmann,* 6 Kan. App. 2d 403, 410-11, 628 P.2d 1080 (1981).

The doctrine of laches is an equitable device designed to bar stale claims where an excessive amount of time has passed prior to the assertion of a claim. Delay, by itself, does not constitute laches and an action generally will not be defeated by laches alone unless some prejudice has resulted therefrom to the rights or interests of the adverse party. See *Stratmann* at 411.

Ratification is the adoption or confirmation by a principal of an act performed on his behalf by an agent which act was performed without authority. Upon acquiring knowledge of his agent's unauthorized act, the principal should promptly repudiate the act, otherwise it will be presumed he has ratified and affirmed the act. See *Equity Investors, Inc. v. Ammest Group, Inc.,* 1 Kan. App. 2d 276, Syl. ¶¶ 5-6, 563 P.2d 531, *rev. denied* 225 Kan. 843 (1977).

Appellant argues that since appellee's conduct was inequitable, appellee may not rely on estoppel. In *Newton v. Hornblower, Inc.,* 224 Kan. 515, we held the person raising estoppel is himself bound to exercise good faith. The trial court specifically found in this case there was no evidence of deceit on the part of appellee. Appellant indicates no evidence to refute this finding. The appellee was thus not barred from raising estoppel.

The trial court found the affirmative defenses of estoppel, waiver, laches and ratification applied to appellant's claim for unauthorized profit-sharing payments. Appellant testified at trial that in 1977 he was presented with the two sets of minutes of the board of directors' meetings, one dated March 12, 1974, and the other March 9, 1976. One established and the other terminated an employee profit-sharing plan. The minutes were prepared to satisfy an IRS audit. Appellant testified he had not known of the profit-sharing plan prior to signing the minutes in 1977. Appellant testified he discovered much later that money had been distributed to employees, including $2,102.46 to appellee, under the plan.

Appellant contends the payments constituted a breach of fiduciary duty since they were done without his knowledge. Appellant testified, however, he signed the corporate minutes discussing the plan in 1977. Thus, he had actual knowledge of the plan several years before filing this action but failed to complain of it at the time. There is no evidence that payments made under the plan were concealed from the appellant or that he inquired about the plan after signing the minutes. The trial court, therefore, did not err in applying estoppel, waiver, laches and ratification to appellant's claim for improper payments under the profit-sharing plan.

Appellant also contends appellee breached a fiduciary duty to Continental when appellee's new company, Superior, did work for a former client of Continental's shortly after the dissolution resolution of August 14, 1980. The work was a new job, but Continental had done work for the client before.

In *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 256, Syl. ¶¶ 7-8, 531 P.2d 428 (1975), this court held:

"When the customer list of a business is not confidential and the business is of such a nature as to rely on open competition to secure orders a former employee may solicit former customers of his employer without being guilty of unfair competition." (Syl. ¶ 7.)

"An officer or director is not chargeable with lack of good faith toward his corporation in regard to a contract previously held by it once the corporation has refused to renew or accept that contract. In such a case the officer or director is free to form a new company and secure a contract for the new company." (Syl. ¶ 8.)

In this case, after the resolution to dissolve was adopted Continental was not in a position to work for the client. The trial court found there was no company for appellee or Superior Structures to compete against. We agree.

Appellant next claims the trial court erred in dismissing his claims for checks which were written solely by appellee on August 15, 1980. As part of the August 14, 1980, dissolution agreement the checking account was to be changed to require the signatures of both appellant and appellee on all company checks. Appellant contends appellee had the burden as a fiduciary to establish these checks were fair and taken in good faith since they were written contrary to the dissolution agreement. The record shows the checks written by appellee were for his wages and vacation pay. Appellant does not argue that appellee

was not entitled to this money, but complains only that the checks were written without his co-signature. The checks were for wages, reasonable in amount, and there was no damage to appellant by the failure of appellee to have them co-signed. Thus, the trial court did not err in ruling appellee did not breach a fiduciary duty by writing the wage checks without the co-signature of appellant.

The final issue raised by appellant as to the breach of a fiduciary duty is that the court erred in dismissing the claim for punitive damages. Punitive damages are proper when a breach of fiduciary duty is involved. *Newton v. Hornblower, Inc.*, 224 Kan. 506, Syl. ¶ 13. In this case, the trial court properly dismissed the claim for breach of fiduciary duty against appellee; thus, under the circumstances it was required to also dismiss the claim for punitive damages.

Appellant next argues the trial court abused its discretion in refusing to consider on appellant's motion for new trial the affidavits of witnesses who had testified at trial. The affidavits included in the motion were those of Arnett; Don Riley, Continental's attorney; and Shirley Garrity, appellant's accountant.

In Arnett's affidavit, he states after the pre-incorporation agreement a misunderstanding arose as to whether the salaries were to remain at the initial level. Arnett's position was the salaries could be increased. Consistent with his trial testimony, the affidavit states he expressed this position in a March 1975 letter to Schraft. The affidavit states, however, Schraft objected to this and it was then agreed that the board of directors would determine the salaries.

In denying the motion for new trial, the trial court stated it had not considered the affidavits. The court noted each affiant had testified at trial, and that Arnett's affidavit contradicted his trial testimony. The court concluded such contradictory evidence is not allowed after the fact.

On appeal, appellant argues Arnett's affidavit shows the statement in his letter respecting salary was never the agreement of the parties and the trial court's finding to that effect is erroneous. Motions for new trial are governed by K.S.A. 60-259, which provides:

"A new trial may be granted to all or any of the parties and on all or part of the issues when it appears that the rights of the party are substantially affected:

". . . .
"[Because of] [e]rroneous rulings or instructions of the court.
". . . .
". . . That the verdict, report or decision is in whole or in part contrary to the evidence.
". . . For newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

We have held the granting or denial of a new trial on grounds of surprise or newly discovered evidence is discretionary on the part of the trial court, and will not be reversed unless a clear abuse of discretion is shown. See *Bott v. Wendler*, 203 Kan. 212, 229, 453 P.2d 100 (1969). The burden is on the party seeking the new trial to show the new evidence could not, with reasonable diligence, have been produced at trial. Where the party does not meet this burden, a trial court does not abuse its discretion in refusing to consider the contents of a supporting affidavit. See *Connolly v. Frobenius*, 2 Kan. App. 2d 18, 25, 574 P.2d 971, *rev. denied* 225 Kan. 843 (1978).

In this case, Arnett, Riley and Garrity all testified at trial as appellant's witnesses. Appellant had every opportunity to examine each of them and elicit the information set out in the affidavits. The appellant failed to show the new evidence, particularly that included in Arnett's affidavit, could not have been produced at trial. The trial court did not abuse its discretion in refusing to consider the affidavits or in denying the motion for a new trial.

The next issue is whether the trial court erred in ruling there was no evidence of a rental agreement on Continental's offices which were located at 805 South Main, Wichita, in a building owned by appellant, and that appellant failed to mitigate his damages. In addition to the office space, Continental also rented warehouse space from appellant at 1711 South Knight, Wichita.

Schraft testified he was seeking $8,880 in rent from the company for the period September 1, 1980, to September 1, 1981. This sum represented a monthly rental of $740 for both the office space and the warehouse. Appellant testified he could not separate the rent for the two facilities.

Among the resolutions adopted by the board of directors at the August 14, 1980, meeting dissolving the corporation was the following:

"FURTHER RESOLVED: Delbert Story, employee of Continental Structures shall be placed in charge of seeing that all physical assets of the corporation are delivered to 1711 South Knight, Wichita, Kansas, as soon as possible."

The intention of the shareholders was for Continental to move from the office space on Main to the warehouse as soon as practical.

Despite this intent and resolution,. the furniture and other office equipment was not moved from the office on Main Street until a year later, in August 1981, when an auctioneer removed it for sale.

The trial court found there was insufficient evidence of a rental agreement for 805 South Main and that appellant had failed to mitigate his damages. On a motion to amend or for new trial the court found additionally appellant had directed Delbert Story to change the locks on Continental's office on Main shortly after the August 14 resolution. Leis was not given a set of new keys. The court found the furniture and equipment had remained on the premises because of the actions of appellant and he had breached his duty to the corporation to preserve its assets. Further, appellant made no effort to relet the offices until the furniture was removed in August of 1981. The court did find rent was due for the warehouse space at 1711 South Knight. Rent for the warehouse was set by the court at $275 per month, plus interest.

On appeal, appellant complains of the court's ruling concerning the existence of a rental agreement for 805 South Main. Appellant points to appellee's answer to the second amended petition which contains an admission by appellee that a rental agreement existed for 805 South Main and 1711 South Knight. Despite admission as to the existence of a rental agreement, appellant was properly not allowed to recover due to his failure to mitigate damages and actual expulsion of appellee by changing the locks on the offices. Appellant does not argue the trial court erred in its ruling on mitigation. For this reason, Schraft was properly denied rent on the office at 805 South Main.

Appellant next complains of the court's proration of the $740 per month lump sum claimed by appellant and the award of $275 per month for the warehouse space. Appellant contends this was done without supporting evidence. Appellant's second amended petition, however, includes a lease, attached as an exhibit, cov-

ering only the 1711 South Knight property, with rent set at $275 per month. Since appellant was unable to state how much of the $740 per month he claimed was attributable to the separate properties, the only evidence of rent due for 1711 South Knight was the written lease for $275. The trial court's ruling is supported by substantial competent evidence.

The final issue is whether the trial court erred in allowing the testimony of accountant Steven Houlik from the work papers of Continental's former accountant or in determining the amount due appellant on a note.

From 1977, to the date of dissolution of the company, Ray Eyman was Continental's accountant. Eyman, however, could not testify at trial for health reasons which had led to memory loss. Accounting testimony, therefore, was received from Shirley Garrity, on behalf of appellant, and Steven Houlik, on behalf of appellee. Garrity testified based only upon her review of the company's books and records. She stated from her review of the general ledger, Continental owed appellant $7,719.24.

On cross-examination, Garrity testified the ledger book was posted only through March 31, 1979. She found no assets and liabilities listed for the period after that date, although there was an operating journal reflecting deposits and payments for the period April 7, 1980, through September 15, 1980. She never obtained or requested Eyman's work papers.

At the August 14, 1980, meeting dissolving the corporation, a resolution was adopted retaining Houlik to bring "the books of account to date, prepare any tax returns . . . and . . . perform any accounting services in conjunction with the liquidation and dissolution of the corporation." Houlik testified at trial the general ledger was only fully posted through March 31, 1978. It is unclear whether the difference between this date and the March 31, 1979, date testified to by Ms. Garrity is merely a clerical error. Entries after that date were found by Houlik in Eyman's work papers. Houlik testified there were entries in the work papers for the year ending March 31, 1979, which showed Continental performed jobs for appellant, thereby resolving any indebtedness to appellant.

After evaluating the testimony of the two accountants, the trial court determined the books and work papers considered together showed $3,000 was owed by the company to appellant.

On appeal, appellant argues the court erred in receiving Houlik's testimony based on Eyman's work papers since the work papers were inadmissible hearsay and were admitted without proper foundation. If the work papers were not admitted, the company's indebtedness to appellant would remain at the $7,719.24 amount shown in the general ledger. The court held the work papers were hearsay but admissible under the business records exception to the hearsay rule, K.S.A. 60-460(*m*), which allows the admission of:

"Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

In *State v. Cremer,* 234 Kan. 594, Syl. ¶ 2, 676 P.2d 59 (1984), this court discussed the proper foundation for the admission of business records.

"K.S.A. 60-460(*m*) does not require that the custodian of business records be called to lay the foundation facts for their admission into evidence. The foundation facts may be proved by any relevant evidence and the person making the entries in the records need not be called to authenticate them if they can be identified by someone else who is qualified by knowledge of the facts. The policy of the section is to leave it up to the trial court to determine whether the sources of information, method, and time of preparation reflect trustworthiness."

Eyman was not available to testify at trial because of his health problems. It was clear from the testimony of Garrity and Houlik that the formal records of the company were not fully posted after 1978 or 1979. Houlik, who had been hired by corporate resolution to complete the company's accounting, testified the missing postings were in Eyman's work papers. Since the papers represented the company's only accounting after the last posting in the formal books, they appear to be the company's "books and records." Houlik had obtained the papers from Mr. Eyman; therefore, Houlik was their custodian.

The trial court determined the sources of information and method of time of preparation reflected trustworthiness. The absence of entries in the formal corporate ledgers and the existence of entries in Eyman's work papers were rationally ex-

plained. We find no abuse of discretion by the trial court in allowing Houlik's testimony based upon the records.

The judgment of the trial court *is* affirmed.

HOLMES, J., not participating.