(18 P.3d 291)
No. 85,141

THOMAS F. GRAY, Ph.D., CCC-A, d/b/a AUDIOLOGY ASSOCIATES, *Appellant,* v. MANHATTAN MEDICAL CENTER, INC., and JOHN M. BARLOW, M.D., and BENJAMIN C. PEASE, M.D., *Appellees.*

Opinion filed February 9, 2001.

*Jeffrey A. Wietharn*, of Coffman, DeFries & Nothern, P.A., of Topeka, for appellant.

*William L. Frost*, of Morrison, Frost & Olsen, of Manhattan, for appellee Manhattan Medical Center.

*Charles R. Hay*, of Goodell, Stratton, Edmonds & Palmer, LLP, for appellees John M. Barlow, M.D., and Benjamin C. Pease, M.D.

Before BEIER, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

BEIER, J.: Plaintiff-appellant Dr. Thomas F. Gray, an audiologist and hearing aid dispenser, brought suit against defendants-appellees Manhattan Medical Center, Inc. (MMCI), Dr. John M. Bar-

low, and Dr. Benjamin C. Pease. Gray wanted to prevent competition from another audiologist and hearing aid dispenser employed in the defendant physicians' otolaryngology practice in MMCI, the office building all of the individual parties share. Gray now seeks review of the district court's ruling in favor of defendants on cross-motions for summary judgment.

Our standard of review on cases decided in the district court on a motion for summary judgment is often stated:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Gray pursued two causes of action. In the first, he attempted to employ a shareholder derivative theory. Gray claimed that, as an MMCI shareholder, he was entitled to take action on MMCI's behalf against his fellow shareholders, Barlow and Pease, for their alleged violation of their lease with MMCI and for an alleged violation of MMCI's bylaws. In his second cause of action, Gray asserted he was a third-party beneficiary of the lease between MMCI and Barlow and could sue for breach of the lease.

Gray has been a shareholder of MMCI since the 1980s and signed a lease with MMCI in 1993. Barlow also became a shareholder in MMCI in the 1980s and signed a lease with MMCI in 1993. He later hired Pease, and MMCI approved Pease as a tenant and future stockholder. At the time of Gray's lawsuit, Pease had not yet signed a lease with MMCI.

In his effort to prevent Barlow and Pease from employing a masters level audiologist in their practice, Gray relied on the following provisions from Barlow's lease:

"3.  USE:
   "The entire leased area shall be for the exclusive use of the TENANT, TEN-ANT'S agents, servants and invitees for the purposes of the practicing the art of TENANT'S profession. This paragraph is subject to the provision in paragraphs concerning termination.

   . . . .

"12.   EMPLOYMENT:
   "No TENANT shall employ or associate with a person licensed to practice the person's profession until such person has been approved by the LANDLORD in accordance with Article VIII of its By-laws, or any amendments thereto."

Gray also argued that the lease incorporated MMCI's bylaws and that Articles VIII and IX of the bylaws prohibited Barlow and Pease from providing services that compete with another tenant of MMCI. Article VIII entitled "Renters" states:

   "Stockholders may approve the leasing of premises or establishment of other share arrangements with physician, non-physician, dentist, non-dentist or non-health profession affiliates which will enhance or aid the patients of stockholders. These renters are not construed to be eligible at any time to become a stockholder.
   "If, however, a renter is to be allowed under this Section, then he/she shall be in a specialty area not currently available or offered within the Manhattan Medical Center and must be practicing in the Manhattan Medical Center on a part-time basis."

Article IX of the MMCI bylaws entitled "Office Tenancy" states:

   "Any stockholder may propose as a tenant, any doctor or health profession affiliate, if the doctor or health profession affiliate proposed is a specialist in a field in which no stockholder is practicing. When there is a stockholder who is practicing in a medical specialty and the proposed doctor or health profession affiliate has not practiced within the Manhattan community for two (2) years or more, then only the stockholder practicing in that specialty may propose a tenant who also practices in that specialty. If there are two (2) separate suites or units of stockholders who are practicing in the same specialty, the new tenant need only be proposed by one (1) of the specialty suites or units."

When Barlow hired an audiologist to conduct hearing tests and dispense hearing aids, Gray notified Barlow and MMCI that he believed the employment of the audiologist violated the lease and bylaw provisions. Gray also sought corrective action by MMCI. MMCI's board of directors elected not to respond to either of Gray's demands because it found no violation had occurred. Gray has not claimed that any member of the board had an improper

personal interest in the issue. Nor has he claimed that any board member committed fraud or gross negligence in reaching the decision.

The district court ruled Gray's shareholder derivative cause of action failed as a matter of law because Gray had no evidence that there was a " 'wrong' to the corporation as a result of the board's decision not to pursue any action on Dr. Barlow's hiring of the audiologist or, framed differently, a 'right' that the board improperly failed to exercise." In light of that holding, the court held the third-party beneficiary claim to be moot.

### Shareholder Derivative Action

One or more shareholders may file a derivative lawsuit to enforce a right of the corporation if the corporation fails to enforce that right. Generally, before filing suit, the shareholder or shareholders must make a demand upon the corporation requesting the desired action to be taken. The court must be satisfied the shareholder or shareholders adequately represent the interest of the corporation. K.S.A. 60-223a.

MMCI argues that it is irrelevant whether the terms of the lease and bylaws were breached because MMCI's decision not to take the corrective action sought by Gray was a discretionary and protected business judgment. MMCI relies upon Delaware case law to support this argument.

Decisions by the Delaware courts regarding corporation law are persuasive because the Kansas "General Corporation Code has been patterned after, and at times contains identical provisions of, the Delaware general corporation law." *Achey v. Linn County Bank*, 261 Kan. 669, 676, 931 P.2d 16 (1997).

In Delaware, the business judgment rule undergirds a presumption of the propriety of a board's decision in certain circumstances. The rule evolved from Del. Code Ann. tit. 8, § 141(a) (1991), the statute granting the directors of Delaware corporations their managerial decision-making power. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981).

The Delaware statute is nearly identical to K.S.A. 17-6301(a), which provides:

"The business and affairs of every corporation shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this act or in the articles of incorporation. If any such provision is made in the articles of incorporation, the powers and duties conferred or imposed upon the board of directors by this act shall be exercised or performed to such extent and by such person or persons as shall be provided in the articles of incorporation."

The business judgment rule encompasses decisions whether to initiate, or refrain from entering, litigation. 430 A.2d at 782. It presumes a board's decision was made by disinterested directors who acted on an informed basis, in good faith, and in the honest belief the decision was in the corporation's best interest. *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990). Its protection can be claimed when disinterested directors have fulfilled their duty to inform themselves of all material data reasonably available to them and then acted with due care. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled in part on other grounds Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). A corporation may invoke the rule itself to short-circuit a suit such as this by demonstrating that the members of its board of directors who took the questioned action would be protected by the rule if they were sued individually. See *Zapata*, 430 A.2d at 784 n.10 (when stockholders, after making demand and having their suit rejected, attack board's decision as improper, decision falls under business judgment rule if requirements of rule met).

Under K.S.A. 17-6301(a) and K.S.A. 60-223a, Kansas follows Delaware's basic principles regarding application of the business judgment rule to insulate board decisions from attack. As our Supreme Court has said:

"It is not the function of the court to manage a corporation nor substitute its own judgment for that of the officers thereof. It is only when the officers are guilty of willful abuse of their discretionary power or of bad faith, neglect of duty, perversion of the corporate purpose, or when fraud or breach of trust are involved, that the courts will interfere." *Cron v. Tanner*, 171 Kan. 57, 64, 229 P.2d 1008 (1951).

Because Gray does not contend any of the MMCI directors had a personal interest in the outcome or that any was grossly negligent, we must determine if there was evidence to assist Gray in demonstrating that the directors were ill informed.

Our review of the record persuades us that the MMCI board took pains to carefully review all material information reasonably available to it before arriving at a decision. Gray and his attorney first presented their letter and comments regarding Gray's position on Barlow's audiologist at a meeting of the board. The board then elected to address Gray's demand at a special meeting.

Prior to the special meeting, Barlow's attorney wrote to MMCI's attorney, advising that he believed the bylaws were ambiguous and that Barlow was allowed under the bylaws to employ anyone who could assist him in his medical specialty.

At the special meeting, Gray, his attorney, Pease, and the attorney for Barlow and Pease appeared and presented arguments regarding their respective positions. Before voting, the MMCI board also considered a written opinion by its attorney, which said Barlow and Pease did not breach the bylaws or the lease. The opinion reviewed the governing documents and concluded, among other things, that a "renter" was different from a "tenant." Barlow's audiologist was neither a shareholder, tenant, nor renter and none of the bylaws provisions were applicable. Moreover, according to the opinion, Barlow was entitled under the lease to employ an audiologist to assist in his ear, nose, and throat practice. Such services were routine in similar practices throughout the country.

By a vote of 5 to 1, the board found no violation of its bylaws and declined to take action upon Gray's demand. The directors in the majority believed legal action against Barlow and Pease was neither financially prudent nor legally correct.

MMCI later received another letter from Gray's attorney, providing more argument and threatening litigation. The board reviewed and discussed the letter with MMCI's attorney at its next monthly meeting and again declined to take action against Barlow and Pease. The directors believed they acted in MMCI's best interest.

Despite this record, Gray argues that language in *Schraft v. Leis*, 236 Kan. 28, 686 P.2d 865 (1984), required the board to take action against Barlow and Pease. *Schraft* acknowledged that bylaws are the rules governing the corporation and that they prescribe the rights and duties of the members regarding the internal govern-

ment of the corporation, the management of its affairs, and the rights and duties existing among the members. 236 Kan. at 34-35. Gray's argument fails to recognize that the business judgment rule gives a corporation's directors the authority to interpret and apply the bylaws and the lease in the corporation's best interest. The principle enunciated in *Schraft* is consistent with this. If the directors did not violate their duty in interpreting and applying the bylaws, they also did not run afoul of *Schraft*.

In this case, there was a dispute regarding the interpretation of the lease and bylaws. Gray did not come forward with evidence to support the existence of a genuine issue of material fact on whether the directors fulfilled their duty to inform themselves about all material information reasonably available or whether, after being so informed, they acted with requisite care in making their decision. It is undisputed that the board considered all of the material information available to it from both parties and, after relying upon legal counsel to assist in interpreting the parties' arguments and the documents, acted with requisite care. The fact that they chose a course of action Gray disagrees with does not affect the applicability or reduce the protection of the business judgment rule.

The district court was correct in its conclusion. Although it relied upon its interpretation of the documents and we rely on the business judgment rule to give summary judgment to the defense on the shareholder derivative action, the outcome is the same. A district court's reason for its decision is immaterial if the ruling is correct for any reason. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997).

### Third-Party Beneficiary Theory

Under the above analysis, Gray's third-party beneficiary argument is not moot. However, given the argument's dependence on documentary evidence, we are able to determine the issue as a matter of law and need not remand for an initial consideration of its merits by the district court. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998) (appellate court may examine documents and determine de novo what they establish); *Heiman v. Parrish*, 262 Kan. 926, 927, 942

P.2d 631 (1997) (regardless of construction given written contract by district court, appellate court may construe contract and determine its legal effect).

Recent cases focusing on third-party beneficiary law divide "beneficiaries" into two classes: intended beneficiaries and incidental beneficiaries. Only intended beneficiaries are allowed to sue for damages resulting from the breach of a contract. Further, because parties are presumed to contract for themselves, their intent that a third person receive a direct benefit must be clearly expressed in the contract. *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 388-89, 736 P.2d 930 (1987).

In determining whether a particular person is an intended beneficiary, the court applies the general rules for construction of contracts. The whole contract is to be considered, not one isolated provision. Where the contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. Contract ambiguity occurs when the words in the contract expressing the intention of the parties may be understood in two or more ways. 241 Kan. at 391.

The lease between MMCI and Barlow does not expressly state the parties' intention to benefit a third party. Nevertheless, Gray contends that the uniformity of the various leases of MMCI tenants meant each was intended to be protected from unwanted competition in the building. See *Fasse*, 241 Kan. 387 (contract provision referring to "wages" with no mention of "employees" clearly and unambiguously makes employees members of class of intended beneficiaries). We do not read the lease in that manner, however. Uniformity does not necessarily mean the tenants were to be third-party beneficiaries of each other's leases. Parties to a contract may have known that it would benefit third parties, but that knowledge alone is not necessarily equivalent to an intention to benefit the third parties. See *Noller v. General Motors Corp.*, 244 Kan. 612, 617, 772 P.2d 271 (1989).

Even assuming Gray's claim that he is an intended beneficiary had merit, his theory would fail for at least one other reason. Paragraph 19 of the lease provides that MMCI's failure to require strict performance on any of the contract terms "shall be deemed

a waiver of any rights or remedies that [MMCI] may have and shall not be deemed a waiver of any subsequent breach." MMCI's refusals to grant Gray's demand were, in essence, waivers of any applicable lease restrictions. As a third-party beneficiary, Gray's rights would be "measured by the terms of the contract between the promisor and promisee, and such rights are no greater than those of the promisee under the contract." 17A Am. Jur. 2d, Contracts § 459, p. 481 (1991).

The district court did not err in finding for defendants on Gray's third-party beneficiary action.

### Completeness of Factual Findings

Gray also argues on appeal that the district court's findings of fact may be incomplete because the court did not acknowledge the existence and application of the lease and bylaws. Our review of the record indicates the district court specifically referred to the paragraphs in the lease and bylaws upon which Gray relied; thus the district court implicitly found the lease and bylaws existed. In addition, if a party believes findings of fact or conclusions of law are incomplete, that belief must be made known at the district court level so that the omission has a chance of being corrected there. Without an objection, omissions in findings will not be considered on appeal, and the district court is presumed to have found all facts necessary to support its judgment. *In re Care & Treatment of Hay*, 263 Kan. 822, 836, 953 P.2d 666 (1998).

Affirmed.