**PEPSI–COLA BOTTLING COMPANY OF PITTSBURG, INC., Plaintiff,**

**v.**

**PEPSICO, INC., et al., Defendants.**

**No. 01–2009–KHV.**

United States District Court, D. Kansas.

Nov. 1, 2001.

---

David W. Hauber, Casey L. Griffith, Todd M. Johnson, John J. Gates, Baty, Holm & Numrich, P.C., Kansas City, MO, for plaintiff.

David E. Everson, Jr., Matthew J. Verschelden, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Lawrence M. Berkowitz, Kristen B. Roubal, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on Defendant Bottling Group, LLC's Motion To Dismiss Plaintiff's Claims For Injunctive And Equitable Relief (Doc. # 66) filed June 6, 2001. After carefully considering the parties' briefs, the Court is prepared to rule. For reasons set forth below, the Court finds that Bottling Group's motion should be overruled.

### Standards For Motion To Dismiss For Failure To State A Claim

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). The issue in reviewing the sufficiency of plaintiff's complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved. See *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### Factual Background

Plaintiff's amended complaint may be summarized as follows:

PepsiCo manufactures and sells soft drink concentrates for Pepsi–Cola soft drink products.[1] PepsiCo has entered

---

1. PepsiCo operates its beverage business through a division, Pepsi–Cola Company.

exclusive bottling appointments ("bottling appointment") with individual bottlers throughout the United States. A bottling appointment, which is a standard form contract, authorizes a bottler to manufacture and distribute Pepsi–Cola soft drink products within a defined, exclusive geographic territory. See First Amended Complaint (Doc. # 47) filed May 14, 2001 at ¶¶ 2, 8. Bottlers may not directly or indirectly sell Pepsi–Cola soft drink products within another bottler's territory. A bottling appointment requires a bottler to vigorously promote and distribute Pepsi–Cola products, and to make a substantial capital investment in plant and equipment. See *id.* at ¶ 9.

Transshipment of any Pepsi–Cola soft drink product into the exclusive territory of another bottler seriously undermines that bottler's rights under the bottling appointment. Because such transshipments pose a threat to the PepsiCo distribution system, PepsiCo in 1984 enacted a Transshipment Enforcement Program to investigate and fine transshipping franchisees. PepsiCo thereafter sent periodic memos to bottlers, reassuring them that it would enforce the exclusive territory agreements.[2] See *id.* at ¶ 13. PepsiCo has frequently reiterated that bottling appointments are intended to benefit Pepsi franchisees by protecting their exclusive territories. See *id.* at ¶ 14.

Pepsi–Cola Bottling Company of Pittsburg, Inc. ("Pittsburg Pepsi") bottles and distributes Pepsi–Cola brand soft drinks under a bottling appointment from Pepsi-Co.[3] See *id.* at ¶ 16. In reliance upon the exclusive rights afforded by the bottling appointment, Pittsburg Pepsi has aggressively marketed Pepsi–Cola soft drink products in its territory—which comprises parts of Kansas and Missouri surrounding Pittsburg, Kansas—and enjoys a high market share. See *id.* at ¶ 7.

Under a separate bottling appointment, Bottling Group, LLC ("Bottling Group") bottles and sells Pepsi–Cola soft drink products in parts of Oklahoma and Missouri.[4] See *id.* at ¶¶ 3, 18. Its territory essentially surrounds that of Pittsburg Pepsi, and it has repeatedly violated the territorial restrictions by selling and dis-

---

**2.** On September 24, 1993, Gerard W. Casey, then vice president and associate general counsel of PepsiCo, issued a memo to all Pepsi–Cola bottlers which stated in pertinent part:

> The Pepsi Bottler has always enjoyed the exclusive right to manufacture and sell franchised products in bottles and cans in its Territory, *to the exclusion of other Pepsi Bottlers and PepsiCo.* Equally fundamental is the Bottler's independence in determining price and other conditions of sale to its customers. PepsiCo remains strongly committed to exclusive territories and the Bottler's exclusive relationship with its customers.
>
> \*     \*     \*     \*     \*     \*
>
> PepsiCo remains committed to the principle that *the local Pepsi Bottler is the sole seller of Pepsi–Cola products in bottles and cans to customers within its Territory, and enjoys an*

*exclusive, direct and highly valuable relationship with each bottle and can customer.* *Id.* at ¶ 16.

**3.** Plaintiff and its predecessors have had a Pepsi–Cola franchise since 1936. See *id.* at ¶ 1. On September 28, 1959, PepsiCo granted Pittsburg Pepsi the sole and exclusive right to bottle, can, distribute and sell Pepsi–Cola soft drink products in a portion of Labette county and all of Bourbon, Crawford and Cherokee counties in Kansas and in portions of Jasper and Barton counties in Missouri. On January 19, 1997, Pittsburg Pepsi obtained the exclusive rights in the municipalities of Strauss and St. Paul, Kansas.

**4.** Bottling Group is the successor in interest to Beverage Products Corporation, which plaintiff named as a defendant in the original complaint.

tributing Pepsi–Cola soft drink products within the exclusive territory of Pittsburg Pepsi.[5] See *id.* at ¶ 19.

Pittsburg Pepsi has repeatedly complained to PepsiCo about transshipments by Bottling Group, but PepsiCo has largely ignored the breaches. Bottling Groups has transshipped thousands of cases of product, thus interfering with Pittsburg Pepsi's current and prospective business relationships. See *id.* at ¶¶ 20–21.

Pittsburg Pepsi asserts that PepsiCo has breached contractual and fiduciary duties to enforce the bottling appointment against Bottling Group (Counts 1 and 2). See *id.* at ¶¶ 22, 31. It also claims that Bottling Group has breached Pittsburg Pepsi's third-party beneficiary rights under the PepsiCo–Bottling Group bottling appointment (Count 3) and tortiously interfered with the bottling appointment between Pittsburg Pepsi and PepsiCo (Count 4). See *id.* at ¶¶ 32–39. Finally, Pittsburg Pepsi alleges that PepsiCo and Bottling Group have conspired to ignore reports of transhipments into its exclusive territory, with the illegal object of interfering with that exclusive territory in order to undermine the value of Pittsburg Pepsi's franchise and to force it to sell the franchise (Count 5). See *id.* at ¶¶ 40–42.

Pittsburg Pepsi asks the Court to declare that Bottling Group is contractually obligated not to transship into plaintiff's territory; that it has wilfully and repeatedly breached such obligations; that it has tortiously interfered with Pittsburg Pepsi's contractual rights and relationships with its current customers and with plaintiff's potential business relations with prospective customers; and that defendants have conspired to harm plaintiff as described. Pittsburg Pepsi asks for an accounting, for actual and punitive damages, and for a preliminarily and permanent injunction to prevent defendants from further breach of its exclusive territory.

## Analysis

Bottling Group asserts that because Pittsburg Pepsi has an adequate remedy at law for each claim against it, plaintiff has failed to state a claim for injunctive relief.[6]

█ As a preliminary matter, Bottling Group does not address what law applies to the issues before the Court. Where (as here) a federal Court exercises diversity jurisdiction, it must apply the choice-of-law rules of the state in which it sits. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The bottling appointments provide, however, that New York law applies. Kansas choice of law rules honor an effective choice of law made by contracting parties. See *Equifax Servs. Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990). Thus New York law applies to the contract issues, although the Court notes that New York law and Kansas law appear to be substantially similar with respect to contract interpretation.

█ As for the tort claims, Kansas law applies because the allegedly tortious con-

---

5. At one point Pittsburg Pepsi sued Bottling Group's predecessor, Beverage Products Corp., in this Court. See Case No. 85–2250–O.

6. Bottling Group focuses on the alleged transhipping violations by Bottling Group and the alleged breach of Pittsburg Pepsi's third-party beneficiary rights under the bottling appointment between Bottling Group and PepsiCo.

Bottling Group does not address plaintiff's claim of civil conspiracy, except to assert in its reply that Pittsburg Pepsi's civil conspiracy claim is "based on the idea that PepsiCo and [Bottling Group] are allegedly conspiring to not enforce the transshipment policy." Defendant Bottling Group, LLC's Reply To Plaintiff's Response In Opposition To Defendant Bottling Group's Motion To Dismiss (Doc. # 100) filed July 9, 2001 at 3.

duct by Bottling Group occurred in Kansas[7] and plaintiff sustained injuries in Kansas. See *Hawley v. Beech Aircraft Corp.*, 625 F.2d 991, 993 (10th Cir.1980) (Kansas courts apply traditional rule of lex loci delicti to choice of law for tort claims); *Brown v. Kleen Kut Mfg. Co.*, 238 Kan. 642, 644, 714 P.2d 942, 944 (1986) (same).

■ Finally, the Court has found no pertinent difference between the standards for injunctive relief under federal, Kansas and New York law. See, e.g., *McNeary v. Niagara Mohawk Power Corp.*, 286 A.D.2d 522, 728 N.Y.S.2d 840, 844 (N.Y.App.Div. 2001) (equitable relief, including declaratory action and injunction require showing of irreparable harm and lack of adequate remedy at law, together with balancing of equities); *Sampel v. Balbernie*, 20 Kan. App.2d 527, 530–31, 889 P.2d 804, 807 (1995) (requiring irreparable harm and lack of adequate remedy). To obtain injunctive relief, plaintiff must show that (1) plaintiff faces a reasonable probability of irreparable future injury; (2) the remedy at law would not provide adequate relief; (3) the threatened injury to plaintiff outweighs the damage that the proposed remedy would cause defendant; and (4) the injunction would not be adverse to the public interest. See *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir.1989); *Sampel*, 20 Kan.App.2d at 530–31, 889 P.2d at 807; *Lesron Jr., Inc. v. Feinberg*, 13 A.D.2d 90, 213 N.Y.S.2d 602, 606 (N.Y.App.Div.1961) (must show that remedy at law is inadequate to properly compensate for injury).

### Breach of Third–Party Beneficiary Rights (Count 3)

Plaintiff might be entitled to a permanent injunction on its claim that Bottling Group breached its rights as a third-party beneficiary of the bottling appointment between PepsiCo and Bottling Group if (1) Bottling Group breached its contractual duty by transshipping Pepsi–Cola products into Pittsburg Pepsi territory, (2) Pittsburg Pepsi is a third-party beneficiary of the bottling appointment between PepsiCo and Bottling Group and (3) an award of monetary damages is inadequate to compensate Pittsburg Pepsi for the injury which it has sustained. The complaint adequately alleges that Bottling Group breached its contractual obligation not to transship products into Pittsburg Pepsi territory. Bottling Group asserts that plaintiff is not a third-party beneficiary to the contract between Bottling Group and PepsiCo,[8] however, and that even if it is, monetary damages are adequate to address any injuries.

■ Third-party beneficiary law divides "beneficiaries" into two classes: intended beneficiaries and incidental beneficiaries.[9]

7. Although the parties have not addressed this issue, arguably some of the allegedly tortious conduct—the origin of the transhipments— occurred in Oklahoma and/or Missouri.

8. In its reply brief, Bottling Group states as follows:

Nowhere does the Agreement say or even intimate that the terms of the Agreement can be enforced by another bottler claiming injury. The Transshipment Policy clearly is to be enforced by PepsiCo. It is, and was meant to be, a vertically enforced Policy by PepsiCo and not as between bottlers, horizontally [sic]. PepsiCo receives complaints from offended bottlers. PepsiCo investi-

gates the complaints. PepsiCo makes the determination of whether a violation occurs. PepsiCo fines a transshipping bottler. And PepsiCo pays the offended bottler any fines owing. There is no direct contact or interaction in the whole policy between bottlers. Plaintiff now is determined to substitute the Court into PepsiCo's roles as the enforcer of the Policy in equity.

Defendant Bottling Group, LLC's Reply to Plaintiff's Response In Opposition To Defendant Bottling Group's Motion To Dismiss (Doc. # 100) filed July 9, 2001 at 5.

9. Bottling Group cites Kansas law on third-party beneficiaries. As noted above, the standard bottling appointment provides that New

**1294**

See *Gray v. Manhattan Med. Ctr.*, 28 Kan.App.2d 572, 580, 18 P.3d 291, 298 (2001); *Port Chester Elec. Const. Corp. v. Atlas,* 40 N.Y.2d 652, 656, 389 N.Y.S.2d 327, 357 N.E.2d 983, 986 (1976) (subcontractor not third-party beneficiary of contract where record did not reflect that contract ran to benefit of subcontractor). Only intended beneficiaries are allowed to sue for damages resulting from the breach of a contract. Further, because parties are presumed to contract for themselves, their intent that a third person receive a direct benefit must be clearly expressed in the contract. See *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 388–89, 736 P.2d 930, 932 (1987).

To determine whether a particular person is an intended beneficiary, the Court applies the general rules of contract construction. The Court must consider the contract as a whole. Where the contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. See *Gray*, 28 Kan. App.2d at 580, 18 P.3d at 298.

The contract between Bottling Group and PepsiCo does not expressly state an intention to benefit third parties, including other bottlers. Pittsburg Pepsi, however, cites the contract provision that PepsiCo may charge an offending bottler for each case of beverage transhipped, and then pay that amount over to the offended bottler. According to Pittsburg Pepsi, this provision shows that the offended bottler is an intended third-party beneficiary— that the contract was intended to protect the exclusive territory of surrounding bottlers. Based on the allegations of the complaint, plaintiff's reading of the contract is a reasonable one, for purposes of the pending motion to dismiss.

Bottling Group asserts that even if Pittsburg Pepsi is an intended beneficiary of the contract, its only remedy is to sue for specific enforcement of the contract. See *id.* (rights of third-party beneficiary measured by terms of contract between promisor and promisee; such rights no greater than those of promisee under contract). Bottling Group asserts that the contract limits any remedies to monetary damages—the system of fines under the transhipment policy.[10] Bottling Group fails to note, however, that the transhipment clause provides that transshipping fines are "[i]n addition to all other remedies [PepsiCo] may have against any Transshipping Bottler for violation of this paragraph." See Memorandum In Support of Defendant Bottling Group, LLC's Motion To Dismiss (Doc. # 67) filed June 6, 2001, Ex. (Doc. # 68) at 12 (filed under seal). Thus the transshipping fines are not the sole remedy available to PepsiCo. Further, the remedies available to Pittsburg Pepsi, as third-party beneficiary of the contract, are not limited to transhipping fines. The remedies available to a third party beneficiary are exactly the same as would be available if it were a contractual promisee of the performance in question. See Corbin On Contracts at 230, 231–32 (where promisee has right to equitable remedy, third party beneficiary may obtain same equitable remedy).

Bottling Group argues strenuously that monetary damages are adequate to compensate Pittsburg Pepsi for any breach of the transshipment clause. The classic remedy for breach of contract is the award

---

York law applies. In any event, the Court has found no substantial difference between New York and Kansas law on this issue.

**10.** Bottling Group also alleges that Pittsburgh Pepsi's sole remedy is to sue *PepsiCo* to enforce the transhipment agreement between Bottling Group and PepsiCo.

of monetary damages. If damages at law cannot adequately compensate the injury sustained from the breach, however, then the remedy at law is inadequate and injunctive relief may be appropriate because of irreparable injury. See, e.g., *Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir.1984) ("if damages can compensate [injury sustained,] injunction will not lie"); *Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir.1953) (Hand, J., concurring) (irreparability of harm includes the "impossibility of ascertaining with any accuracy the extent of the loss"); *Gulf & W. Corp. v. Craftique Prod., Inc.*, 523 F.Supp. 603, 607–08 (S.D.N.Y.1981) (irreparable injury suffered where monetary damages are difficult to ascertain or are inadequate).

Pittsburg Pepsi asserts that because of transshipments by Bottling Group, it faces continued and future loss of customers and ultimately, the loss of all franchise sales and good will. It argues that where a party's conduct is likely to result in further loss of customers and customer goodwill, such conduct causes irreparable harm because of the difficulty and uncertainty in restoring goodwill among customers and regaining business of customers who are and will be induced away, citing *Fireworks Spectacular, Inc., v. Premier Pyrotechnics, Inc.*, 86 F.Supp.2d 1102, 1108–1109 (D.Kan.2000). In Fireworks Spectacular, an employee left an employer with an intent to directly compete with the employer and target its customers. This Court entered an injunction to enforce a covenant not to compete, based on the likelihood of irreparable harm based on further loss of customers and good will. In that regard, the Court relied to a large degree on its finding that defendant posed a "substantial risk of diverting all or part of those customers' business from plaintiff." *Id.* at 1108.

In the end, Pittsburg Pepsi may be unable to prove that transshipment by Bottling Group poses a substantial risk of diverting business from Pittsburg Pepsi. On this record, however, the Court cannot say that Pittsburg Pepsi can show no set of facts on which it might be entitled to injunctive relief on its third-party beneficiary claim. Therefore the motion to dismiss the injunctive claims in Count 3 is not well taken.

**Tortious interference and civil conspiracy (Counts 4 and 5)**

On the first page of the memorandum in support of its motion to dismiss, Bottling Group seeks to dismiss each of Pittsburg Pepsi's three claims for injunctive relief. In the argument section, however, Bottling Group does not specifically address either of plaintiff's tort claims. Rather, Bottling Group focuses on the breach of contract/third-party beneficiary claim. See Memorandum In Support Of Defendant Bottling Group, LCC's Motion To Dismiss Plaintiff's Claims For Injunctive And Equitable Relief. (Doc. # 67) filed June 6, 2001, at 1.[11] Bottling Group cites no case law and provides no analysis in support of

---

11. In its reply, Bottling Group does briefly address Pittsburg Pepsi's claim of interference with contract and conspiracy. See Defendant Bottling Group, LLC's Reply to Plaintiff's Response In Opposition To Defendant Bottling Group's Motion To Dismiss (Doc. # 100) filed July 9, 2001 at 3. It does not cite any case law in support of its argument that damages for these torts are limited to monetary damages. Further, the Court will not address issues raised for the first time in a reply brief. See *IMC Chem., Inc. v. Niro*, 30 F. Supp 2d 1328, 1330 (D.Kan.1998); *Glad v. Thomas County Nat'l Bank*, No. 87–1299–C, 1990 WL 171068 (D.Kan. Oct. 10, 1990) (court will not consider new arguments and issues presented in a reply brief because plaintiff has not had an opportunity to respond).

its claim that Pittsburg Pepsi is not entitled to injunctive relief on its claims of tortious interference and civil conspiracy. The Court will not construct its argument. It therefore overrules Bottling Group's motion to dismiss plaintiff's claims for injunctive relief under tort theories.

**IT IS THEREFORE ORDERED** that Defendant Bottling Group, LLC's Motion To Dismiss Plaintiff's Claims For Injunctive And Equitable Relief (Doc. # 66) filed June 6, 2001 be and hereby is **OVERRULED.**