The Honorable Derek Schmidt Senate Majority Leader Chairman, Confirmations Oversight Committee State Senator, 15th District P.O. Box 747 Independence, Kansas 67301
 The Honorable Anthony Hensley Senate Minority Leader Vice-Chairman, Confirmations Oversight Committee State Senator, 19th District 2226 S.E. Virginia Avenue Topeka, Kansas 66605
Dear Senators Schmidt and Hensley:
You inquire regarding the nomination and appointment process for members of the Board of Directors (Board) of the University of Kansas Hospital Authority (Authority). The Authority is an independent instrumentality of the State charged with operating the University of Kansas hospital.[1]
The statute governing this process is K.S.A. 2006 Supp. 76-3304 which provides, in part:
 "(b) The authority shall be governed by a nineteen-member board of directors. Thirteen of the members shall be appointed by the governor, subject to confirmation by the senate as provided in K.S.A. 75-4315b, and amendments thereto. Members appointed by the governor shall be representatives of the general public who are recognized for outstanding knowledge and leadership in the fields of finance, business, health-care management, health care providers, legal affairs, education or government. Of the 13 members representing the general public, there shall be at least one member from each congressional district. Six members shall be ex officio voting members consisting of the chancellor of the university of Kansas, the executive vice chancellor of the university of Kansas medical center, the executive dean of the university of Kansas school of medicine, the chief of staff of the university of Kansas hospital medical staff, the president of the authority and the dean of the university of Kansas school of nursing.
 . . . .
 "(d) After the board of directors is appointed . . . members other than ex officio shall be appointed for a term of four years each. Whenever a vacancy occurs in the membership of the board prior to the expiration of a term of office, the governor shall appoint, in the manner provided by subsection (e), a qualified successor to fill the unexpired term. Each member shall hold office for the term of appointment and until the successor has been appointed and confirmed.
 "(e) When a vacancy occurs or is announced regarding a member or members representing the general public, a nominating committee of the board after receiving input from the board and conferring with the board shall assemble a slate of not less than two nor more than three persons for each vacancy and shall forward each slate to the governor. The governor shall appoint one board member from each slate and shall forward each appointment to the senate for confirmation as provided in K.S.A. 75-4315b, and amendments thereto. Except as provided by K.S.A. 2005 Supp. 46-2601, and amendments thereto, no person appointed to the board shall exercise any power, duty or function as a member of the board until confirmed by the senate.
 . . . .
 "(k) The board may adopt, repeal and amend such rules, procedures and bylaws, not contrary to law or inconsistent with this act, as it deems expedient for its own governance and for the governance and management of the authority."
Your questions are, as follows:
1. Is the practice of submitting to the governor staggered slates ofnominees that leave the governor no discretion in the persons nominatedto fill multiple vacancies on the board permissible under K.S.A. 2006Supp. 76-3304?
Answer: Section (e) of K.S.A. 2006 Supp. 76-3304 addresses the nomination process which provides that the Board's nominating committee "shall assemble a slate of not less than two nor more than three persons for each vacancy and shall forward each slate to the governor."
When interpreting this provision, an appellate court will first look to the intent as expressed in the language.[2] If the language is plain and unambiguous, the court is obligated to implement the expressed intent.[3]
Clearly, the nomination process does not prescribe a procedure for submitting slates to the Governor. Therefore, in the absence of legislation dictating a process, submitting two or more slates for multiple vacancies does not violate Section (e).
We also note that when Section (e) was amended in 2002 to increase the size of the Board, the appointment process was revised to more closely resemble the judicial appointment process which contemplates submitting multiple lists for multiple vacancies.[4]
We have been advised that the Board's nominating committee has been submitting two or three two-person slates for multiple vacancies at the same time rather than submitting one slate and waiting till the Governor makes her selection before submitting another slate. While the law does not require the latter procedure, the current process may inadvertently result in a slate containing a person who was previously appointed. For example:
Slate #1: Smith Jones
Slate #2: Jones White
Slate #3: White Davis
If the Governor appoints Smith from the Slate #1 to fill Vacancy #1 and White from the Slate #2 to fill Vacancy #2, the only person eligible for appointment for Vacancy # 3 is Davis which, effectively, precludes the Governor from selecting between two candidates. Such a slate would not comply with the statute.
In order to abide by the spirit of the law which presumes a meaningful choice among nominees, we suggest that the Board's nominating committee revise its practice of submitting multiple slates for multiple vacancies and consider submitting a slate of nominees only after the Governor has made her selection from a previously submitted slate.
2.
(a) Once a slate is presented to the Governor, may the Governor— either formally or informally — reject the slate or request that analternate slate be presented to her?
 (b) Once a slate is presented to the Governor, may the nominatingcommittee withdraw the slate for the purpose of altering its compositionor presenting an alternate slate?
Answer: Unlike other statutes authorizing the rejection or withdrawal of slates of nominees,[5] K.S.A. 2006 Supp. 76-3304 is silent. Section (e) provides that a nominating committee "shall assemble a slate" of individuals and "shall forward" the slate to the Governor. The Governor "shall appoint one board member from each slate" and then "shall forward each appointment to the senate for confirmation."
Given the imperative that the Governor "shall" appoint a person from a slate of candidates, the Governor must select from the slate of candidates submitted to her. However, a literal interpretation of this provision is untenable in those, hopefully, rare situations where a nominee dies, is otherwise unable to serve, or does not meet the statutory eligibility requirements of Section (b).[6]
In filling a vacancy for an unexpired term, the Governor must appoint, in the manner outlined in subsection (e), "a qualified successor."[7]
As the Kansas Constitution requires the Governor to faithfully execute the laws,[8] the Governor must adhere to the statutory criteria for Board membership imposed by the Legislature.[9] In our opinion, Section (e) requires the Governor to fill an unexpired term with a person meeting the statutory qualifications whose name appears on a slate submitted by the Board's nominating committee. In this same vein, the Governor is responsible for ensuring that a candidate for a full four-year term meets those same statutory qualifications.
While, presumably, the nominating committee vets all candidates and submits a slate of nominees meeting such requirements, this does not absolve the Governor of her responsibility to ensure that the person she appoints meets the statutory qualifications.[10]
Therefore, in order to avoid a construction that could lead to unreasonable and absurd results,[11] it is our opinion that, as the Governor can only select from a slate provided by the Board's nominating committee, common sense dictates that should a candidate die, be otherwise unable to serve, or not meet the statutory requirements, the Board's nominating committee should simply provide to the Governor another slate of nominees.
3. The statute provides that "no person appointed to the board shallexercise any power, duty or function as a member of the board untilconfirmed by the Senate."
 a. Does [this prohibition apply] to persons who have been nominated bythe nominating committee . . . but have not yet been appointed by thegovernor?
Answer: Yes. K.S.A. 2006 Supp. 76-3304(e) is clear that gubernatorial appointees can exercise the powers, duties, and functions of a Board member only if the appointee is either: (1) confirmed by the Senate pursuant to K.S.A. 75-4315b; or (2) authorized by the confirmation oversight committee pursuant to K.S.A. 46-2601.
b. May a person not yet confirmed by the Senate participate indiscussion in open sessions of the board?
Answer: Yes, to the extent allowed by the Board pursuant to the Kansas Open Meetings Act.[12] An appointee not yet confirmed would have the same right as any other member of the public to attend an open meeting of the Board.[13] As with any member of the public, participation in Board discussions is discretionary with the Board.[14]
 c. May a person not yet confirmed . . . attend an executive session ofthe board?
Answer: Yes, but only if the person will aid the Board in its discussion.[15] Only Board members have the right to attend an executive session.[16] However, individuals who aid the Board in its discussions may be discretionarily admitted by the Board.[17]
 d. May a person not yet confirmed . . . participate in an executivesession of the board?
Answer: See Answer to Question 3(c).
e. May a person not yet confirmed . . . cast a vote on any questionbefore the board?
Answer: No. The right to vote belongs only to gubernatorial appointees who have either: (1) been confirmed by the Senate pursuant to K.S.A.75-4315b; or (2) authorized by the confirmation oversight committee pursuant to K.S.A. 46-2601.
4. Can the Provost of the University of Kansas who also holds theoffice of Executive Vice Chancellor of the university serve as an exofficio member of the Board?
Answer: No. See attached letter to Irene M. Cumming, dated May 16, 2007.
5. Does the Governor or the Senate have any permissibleinvolvement in determining who shall fill the six ex officiopositions on the Board?
Answer: No. See attached letter to Irene M. Cumming, dated May 16, 2007.
6.
(a) Is there any limitation on the amount of time that may elapsebetween the governor receiving a slate of nominees and the governorchoosing an appointee therefrom?
Answer: No. Unlike other statutes that impose appointment deadlines on the Governor,[18] K.S.A. 2006 Supp. 76-3304 imposes no such deadline.
(b) Is there any limitation on the amount of time that may elapsebetween the governor choosing an appointee and submitting the same tothe Senate for confirmation?
Answer: No. The Legislature has not imposed a deadline. However, as the Legislature has the power to provide for the appointment of all offices not otherwise provided for in the Kansas Constitution,[19] it may enact legislation imposing deadlines for selection of appointees and submission of appointees to the Senate for confirmation.[20]
 7. In the event any person has exercised any power, duty, or functionas a board member without lawful authority to do so, including casting avote or votes on any matter before the board or participating in anyboard deliberations . . . what remedy or remedies would apply to ensurethat such person's involvement has not improperly affected the board'sactivities?
Answer: Whether or not Board action is affected by virtue of a person voting on a matter in which the person had no authority to do so will depend upon the facts. If there were sufficient votes to pass a measure — notwithstanding the unqualified person's "vote"— Board action will be unaffected. If the number of votes was insufficient,[21] the question will be whether the unqualified person was acting as a "de facto" officer which, if so, may validate his or her actions.[22]
 8. What action would be required to constitute a formal resignation bya public board member, creating a vacancy on the board that would haveto be filled as provided by statute, including new Senate confirmation,even if the vacancy were filled by appointment of the same person whoseresignation created the vacancy?
Answer: The statutes governing the Board do not address resignations. However, the Authority's bylaws do provide for resignation,[23] as follows:
 "(a) Any Director other than an ex officio member of the Board may resign at any time by giving written notice to the Chairperson or the Secretary of the Authority. The resignation shall take effect on the date such notice is received or on any later date specified in the notice, and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective."[24]
The problem is that the bylaws conflict with the common law which provides that the resignation of a public officer is not effective until it is accepted by the appointing authority.[25] Until the resignation is accepted, it is simply an offer to resign.[26] If the common law controls rather than the bylaws, then a Board member's resignation is not effective until accepted by the Governor.[27]
Common law is the body of law derived from judicial decisions, rather than from statutes or constitutions.[28] The common law operates in Kansas where the Kansas Constitution is silent or the Legislature has failed to act.[29] Neither the Constitution or the statutes address either a generic process for the resignations of public officers or, specifically, the resignation of Board members.
While the Authority is an instrumentality of the State, it also operates as a corporate entity[30] and, as such, is authorized to establish bylaws.[31] Bylaws are self-imposed rules resulting from an agreement or contract between the corporation and its members to conduct the corporate business in a particular way.[32] Bylaws prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs, and the rights and duties existing among the members.[33]
The general rule is that bylaws affect only the corporation's members, directors, officers and those persons who deal with the corporation with notice of, or under circumstances that they are bound to take notice of its bylaws.[34] Therefore, while the Board is statutorily authorized to adopt bylaws that are "not contrary to law,"[35] such bylaws are limited to the Authority's "own governance and for the governance and management of the authority."[36] Therefore, insofar as resignations are concerned, the bylaws cannot control whether a resignation is sufficient to create a vacancy on the Board. As Board members are public officers,[37] it is our opinion that, in the absence of a statute, the common law prevails and, therefore, a Board member's resignation will not create a vacancy on the Board unless and until it is accepted by the Governor.
However, acceptance of the resignation does not need to be formal. Rather, any conduct on the part of the appointing authority "indicating a purpose to accept [the resignation] is sufficient, such as the appointment of a successor, or recognizing the existence of a vacancy, or in any manner treating the resignation as operative."[38] Whether or not the Governor has accepted a Board member's resignation is a question of fact.
Sincerely,
 Paul J. Morrison Attorney General
 Mary Feighny Deputy Attorney General
PJM:MF:jm
[1] K.S.A. 2006 Supp. 76-3302; 76-3304(a).
[2] Bluestem Telephone Co. v. Kansas Corp. Commn., 33 Kan.App.2d 817
(2005).
[3] Id.
[4] Minutes, Senate Public Health Welfare, March 12, 2002, Attachment 3. K.S.A. 20-134; K.S.A. 20-2910.
[5] K.S.A. 20-134; 20-2910; 20-3008; K.S.A. 2006 Supp.75-2701(f)(1).
[6] "Members appointed by the governor shall be representatives of the general public who are recognized for outstanding knowledge and leadership in the fields of finance, business, health-care management, health care providers, legal affairs, education or government. [O]f the thirteen members . . . there shall be at least one member from each congressional district." K.S.A. 2006 Supp. 76-3304(b).
[7] K.S.A. 2006 Supp. 76-3304(d). Emphasis added.
[8] Kan. Const., Art. 1, § 3; Barrett v. Duff, 114 Kan. 220
(1923).
[9] The legislature may constitutionally restrict, by way of statute, the gubernatorial choice of an appointee by imposing explicit qualifications. Leek v. Theis, 217 Kan. 784, 807 (1975).
[10] The Senate, in executing its confirmation authority, also has a duty to ensure that the appointee meets the statutory eligibility requirements. Barrett v. Duff, 114 Kan. 220 (1923); Attorney General Opinion No. 96-25.
[11] The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results.Tompkins v. Bise, 259 Kan. 39 (1996).
[12] K.S.A. 75-4317 et seq.
[13] Attorney General Opinion No. 80-43.
[14] http://www.ksag.org/content/page/id/145
[15] Attorney General Opinions No. 82-176, 86-143, 87-170, 91-31, 92-51, 92-56. See http://www.ksag.org/content/page/id/147; http://www.ksag.org/files/shared/KOMA/pdf
[16] Attorney General Opinion No. 86-143.
[17] Note 15. See K.S.A. 2006 Supp. 76-3306(b).
[18] K.S.A. 20-2911 (30 days/district court judge vacancy); K.S.A.20-3005 (60 days/Kansas Court of Appeals vacancy); Kan. Const., Art. 3, § 5 (60 days/Kansas Supreme Court vacancy).
[19] Kan. Const., Art. 2, § 18; Art. 15, § 1.
[20] Leek v. Theis, 217 Kan. 784, 808 (1975). See Attorney General Opinion No. 90-80.
[21] K.S.A. 2006 Supp. 76-3306(a).
[22] Olathe Hospital Foundation, Inc. v. Extendicare Inc.,217 Kan. 546 (1975); Attorney General Opinion No. 83-133 ("An officer defacto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised under color of a known . . . appointment, void because the officer was not eligible . . . or, by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.")
[23] By laws adopted pursuant to K.S.A. 2006 Supp. 76-3304(k).
[24] Amended and Restated Bylaws of the University of Kansas Hospital Authority, Art. IV, § 4.4(a). Emphasis added.
[25] The State, ex rel. Hopkins v. Board of Education of the City ofCouncil Grove, 106 Kan. 863, 865 (1920); Rogers v. Slonaker,32 Kan. 191, 193 (1884); State ex rel. Toepke v. Clayton, 27 Kan. 442, 445
(1882); Attorney General Opinion No. 90-1.
[26] Rogers v. Slonaker, 32 Kan. 191, 193 (1884).
[27] The Governor is the appointing authority. K.S.A. 2006 Supp.76-3304(b)(e).
[28] Noone v. Chalet of Wichita, LLC, 32 Kan.App.2d 1230 (2004).
[29] K.S.A. 77-109; Bland v. Scott, 279 Kan. 962 (2005).
[30] K.S.A. 2006 Supp. 76-3304(a); 76-3308.
[31] K.S.A. 2006 Supp. 76-3304(k).
[32] Schraft v. Leis, 236 Kan. 28, 35 (1984).
[33] Id. at 35.
[34] 18A Am.Jur.2d Corporations § 271.
[35] K.S.A. 2006 Supp. 76-3304(k).
[36] Id.
[37] Durflinger v. Artiles, 234 Kan. 484, 502-504 (1983)(rev'd on othergrounds Boulanger v. Pol, 258 Kan. 289 (1995). Sowers v. Wells,150 Kan. 630 (1939); Attorney General Opinions No. 2003-13, 2002-28,2000-8.
[38] State, ex rel. Hopkins v. The Board of Education of the City ofCouncil Grove, 106 Kan. 863, 866 (1920); Attorney General Opinion No. 90-1.