EARL E. ROHER TRANSFER & STORAGE COMPANY, INC., a Corporation, *Appellant,* v. HUTCHINSON WATER COMPANY, INC., a Corporaton, *Appellee.*

No. 40,803

EARL E. ROHER, *Appellant,* v. HUTCHINSON WATER COMPANY, INC., a Corporaton, *Appellee.*

(322 P. 2d 810)

Opinion filed March 8, 1958.

*Ralph J. Thorne,* of Hutchinson, argued the cause, and *Charles E. Rauh* and *John A. Robinson,* both of Hutchinson, were with him on the briefs for the appellants.

*J. Richards Hunter,* of Hutchinson, argued the cause, and *Walter F. Jones, Harry H. Dunn,* and *William B. Swearer,* all of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: These actions were commenced separately and in each case an appeal was taken from an order of the trial court sustaining a demurrer of appellee filed against the petition of appellant. This court ordered consolidation of the appeals for consideration here.

The parties will hereafter be referred to as plaintiff and defendant, and we will refer to the petitions in the singular since they are identical with the exception of the name and capacity of the parties plaintiff and the element of damages.

The pertinent portions of the petition may be summarized as follows:

On September 12, 1950, the qualified voters of the city of Hutch-

inson approved ordinance No. 3361 granting a franchise to defend-
ant to operate a water plant for the city and to furnish water thereto;
plaintiff was a citizen and taxpayer of the city and was thereby en-
titled to the rights and benefits enumerated under the contract
between the city and the defendant; section 5 of the ordinance
above referred to provides that "The grantee . . . shall main-
tain its water supply and system . . . so that there shall be
available for fighting fires the number of hose streams (with pres-
sure of not to exceed 115 pounds at the pump discharge at its cen-
tral pumping plant) as determined by the following formula:

"The number of fire streams shall be 2.8 times the square root of the popu-
lation of the City in thousands. Fire streams in the business district shall be
construed to mean the discharge of 240 to 250 gallons per minute. . . . Of
the total number of fire streams as figured by the above formula not less than
two-thirds of the number shall be considered as available to play on a single
block in the mercantile district . . .

"Fire pressures within the area covered by the gridironed portion [network
of pipes] of the water distribution system will be ninety pounds per square
inch for the mercantile districts . . . as measured at the fire hydrants
when the required number of fire streams are in play."

The petition further alleged:

Plaintiff's property was located in the mercantile district and
defendant was obligated to furnish plaintiff with ninety pounds of
water pressure; on July 18, 1954, through no fault of plaintiff, fire
broke out on plaintiff's property; the city fire department arrived in
due time but was hindered in its attempts to extinguish the fire
because of the failure to have sufficient water supply and pressure;
at the time of the fire, ninety pounds of water pressure per square
inch was not provided but only sixty to seventy pounds of pressure
was available when the fire department began fighting the fire, and
after a few minutes the pressure dropped to forty pounds where it
remained until the fire was finally extinguished; because of de-
fendant's failure, the fire department could not utilize its equipment
to its practical advantage; plaintiff thereby sustained damage far
in excess of any amount he would have sustained had the pressure
been what defendant was obligated to furnish under the contract;
defendant had knowledge of the inadequate water supply and pres-
sure to the fire hydrants; it had been constantly brought to defend-
ant's attention, and defendant had negligently failed to remedy the
situation. Defendant's negligence in failing to maintain the water
supply and pressure was the proximate cause of plaintiff's damage.
The remainder of the petition had to do with damages.

The ordinance under consideration was made a part of the petition by stipulation. The salient parts thereof read:

"Section 1. That in consideration of the benefits to the City of Hutchinson, Kansas, and its inhabitants . . . there is hereby granted to the Hutchinson Water Company, Inc., . . . the right . . . to supply the City of Hutchinson, Kansas, and the inhabitants thereof with water for all purposes for which water may be used . . . and . . . for all purposes for which water is furnished, distributed, sold, and used, all upon the terms and conditions hereinafter set forth.

"Section 3. That the City does hereby agree to pay for the use of fire hydrants and for water required for municipal fire protection . . . That all public fire hydrants shall be used exclusively for the extinguishment of fires, necessary drill and practice of the Fire Department, the flushing of city streets, sewers, and gutters, and other public or private uses approved by the Chief of the Fire Department, and the Hutchinson Water Company, Inc., . . . but all uses of fire hydrants in the City of Hutchinson shall be under the direction and supervision of the Chief of the Fire Department . . .

"Section 4. That as consideration for the rights and privileges granted herein, the Hutchinson Water Company, Inc., binds and obligates itself, its successors and assigns, during the full term of this ordinance, to furnish the City of Hutchinson, Kansas, and its inhabitants, water, upon the terms and conditions stated in this ordinance . . .

"Section 8. The Hutchinson Water Company, Inc., hereby agrees to save the City of Hutchinson, Kansas, harmless from any liability, loss, damage, or expense which it may sustain by reason of the grantee's negligence, default, or misconduct in the construction, operation, or maintenance of its water system.

"Section 13. That the Hutchinson Water Company, Inc., within thirty days after the passage, approval, and publication of this Ordinance file with the City Clerk its written acceptance of this franchise, whereupon the same shall become and be a binding contract between the City of Hutchinson, Kansas, and the Hutchinson Water Company, Inc., its successors or assigns; otherwise this grant shall be null and void."

At this point in the proceedings the defendant demurred on the ground the petition did not state facts sufficient to constitute a cause of action against defendant and in favor of plaintiff. The trial court, in sustaining the demurrer to the petition, wrote an extensive and comprehensive memorandum opinion wherein many decisions from foreign jurisdictions were cited and discussed, as well as three Kansas cases. Plaintiff thereafter perfected this appeal.

The parties are in accord that this is an action in contract. Plaintiff cites authority from other jurisdictions holding that water companies are liable under situations like the one involved here but such authorities are admittedly in the minority. Kansas has fol-

lowed the majority rule, which was pronounced in *Mott v. Water Co.*, 48 Kan. 12, 28 Pac. 989, as follows:

"Where a city contracts with a water company to furnish a supply of water for use in extinguishing fires, such supply to be paid for by a levy of taxes upon the taxpayers of the city, and by the terms of the city ordinance, which the water company accepts, the water company agrees 'that it will pay all damages that may accrue to any citizen of the city by reason of a failure on the part of the company to supply a sufficient amount of water, or a failure to supply the same at the proper time, or by reason of any negligence of the water company,' there is no such privity of contract between a citizen or resident and the water company as will authorize him to maintain an action against it for the injury or destruction of his property by fire, caused by the failure of the water company to fulfill its contract." (Syl.)

Plaintiff contends that we overruled the Mott case by our decision in *Anderson v. Rexroad*, 175 Kan. 676, 266 P. 2d 320. In the Anderson case the defendant construction company contracted with the city of Assaria to repair and improve portions of the city streets. The pertinent clause of the contract was as follows:

"t. *Property Damage.* The Contractor shall be liable for all damages to buildings, structures, trees, shrubbery, or other property . . . The Contractor, at his expense, shall repair, replace or reconstruct such property or otherwise make amicable settlement of such damage. . . ." (p. 679.)

A careful examination of the Anderson opinion readily reveals that we did not *ipso facto* overrule the Mott case in its entirety, as urged by plaintiff. The discussion on the subjects of privity of contract, third party beneficiary contracts since the recognition of that doctrine, and the modern trend of the opinions is so complete and comprehensive in the Anderson case that repetition is not necessary herein. The contracts in both the Mott and Anderson cases were clearly third party beneficiary contracts and the ruling of the Mott case—that a citizen or resident does not have authority to maintain such an action—was overruled by the Anderson case which held that a third party beneficiary did have such authority. Suffice it to say that we have nothing in the contract here under consideration that approaches the contracts in the Mott and Anderson cases.

The provisions of the contract in this case most favorable to plaintiff's position have been heretofore set out and section 8, while it would save Hutchinson harmless under its terms, cannot be construed to make the contract one of third party beneficiary. The city of Hutchinson is not a party to this case and there is no

reason or justification for a discussion herein of liability of the city. Such a provision was, however, present in the contract involved in *Jenree v. Street Railway Co.*, 86 Kan. 479, 121 Pac. 510, and the court, in substance, there held that such a provision merely secures to the city the right to be reimbursed in the event that its own liability, existing under the law, should be enforced. Otherwise, that case is not analogous to our present question. We are unable to conclude this is a third party beneficiary contract or that there is any privity of contract between plaintiff and defendant.

Other arguments and authorities cited by the parties have been carefully examined but we cannot see that they justify a different conclusion from that reached by the trial court.

The judgment is affirmed.