LIQUI–BOX CORPORATION, Appellant,

v.

STEIN, Appellee.

[Cite as *Liqui–Box Corp. v. Stein* (1994), 98 Ohio App.3d 481.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE06–850.

Decided Nov. 10, 1994.

*Schottenstein, Zox & Dunn, James E. Davidson* and *Lisa Wu Fate,* for appellant.

*Lane, Alton & Horst* and *Rick E. Marsh,* for appellee.

BOWMAN, Judge.

Appellee, David K. Stein, is an attorney who was retained by three women who had filed lawsuits against appellant, Liqui–Box Corporation, and Samuel N. Davis, a former Liqui–Box employee, alleging sexual harassment and discrimination. Davis is not a party to this appeal. After the lawsuits were filed, an article was published in The Columbus Dispatch.[1] As a result of this article, appellant filed this cause of action against appellee seeking damages for defamation. Appellee filed a motion to dismiss for failure to state a claim upon which relief could be granted and for appellant's lack of standing to bring the claim to which appellant filed a memorandum in opposition. On May 23, 1994, the trial court granted appellee's motion to dismiss for failure to state a claim upon which relief

---

1. See appendix.

could be granted. It is from this decision that appellant now brings this appeal, asserting the following assignments of error:

"First Assignment of Error

"The Franklin County Court of Common Pleas erred by dismissing Plaintiff's complaint upon Defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

"Second Assignment of Error

"The Franklin County Court of Common Pleas erred by improperly converting Defendant's motion to dismiss for failure to state a claim upon which relief can be granted into a motion for summary judgment."

Appellant's assignments of error are related and will be considered together. In these assignments of error, appellant asserts that the trial court erred in granting appellee's motion to dismiss.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts that would entitle him to relief. *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. In considering a motion for failure to state a claim, the court is required to view the facts presented in the pleadings in a light most favorable to the nonmoving party. *Fifer v. Buffalo Cafe* (1991), 76 Ohio App.3d 297, 601 N.E.2d 601.

Defamation is a false publication causing injury to a person's reputation, or exposing him to public contempt, shame, disgrace or ridicule, or affecting him adversely in his trade or business. *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 95 N.E. 735. See, also, *Rogers v. Buckel* (1992), 83 Ohio App.3d 653, 615 N.E.2d 669. In an action for defamation, the plaintiff's prima facie case is established when he has demonstrated: (1) a statement of fact; (2) the statement is false; (3) the statement has a defamatory meaning; (4) the statement is published; and (5) the defendant is guilty of some degree of fault. *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 3 OBR 430, 445 N.E.2d 670. See, also, 3 Restatement of the Law 2d, Torts (1977) 155, Section 558.

Appellant asserts that appellee's comment that "[t]hese claims are the worst that I've seen, short of rape," defamed it. On the other hand, appellee asserts that his comments stated his opinion about the allegations in the lawsuits, and did not make a statement about appellant and whether or not the company was guilty of any civil or criminal wrongdoing.

In *Hustler Magazine, Inc. v. Falwell* (1988), 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41, the Supreme Court accepted a jury's finding that an ad parody of

Falwell could not reasonably be understood as describing actual facts about him or actual events in which he participated. Thus, the court provided protection for statements that cannot reasonably be interpreted as stating actual facts about an individual.

In *Greenbelt Coop. Publishing Assn., Inc. v. Bresler* (1970), 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6, the Supreme Court addressed a situation where a real estate developer had engaged in negotiations with a city council for a zoning variance for some of his land while, at the same time, he also negotiated with the city on other land which the city wished to purchase from him. A local newspaper published articles stating that some people had characterized the developer's negotiation position as "blackmail." As a result of the articles, the developer sued for libel. The court rejected the contention that the word "blackmail" implied that the developer had actually committed the crime of blackmail and held that the imposition of liability on such a basis was constitutionally impermissible because, as a matter of constitutional law, the word "blackmail" as used in this circumstance was not slander when it was spoken and was not libel when it was reported in the newspaper. The court stated:

"[E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable. * * *" *Id.*, 398 U.S. at 14, 90 S.Ct. at 1542, 26 L.Ed.2d at 15.

In *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1, 18–19, the court stated:

"[T]he *Bresler* –*Letter Carriers* –*[Letter Carriers v. Austin* (1974), 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745] line of cases provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. *Falwell,* 485 U.S., at 50, 108 S.Ct., at 879 [99 L.Ed.2d at 48–49]. This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation. See *id.,* at 53–55, 108 S.Ct., at 880–882 [99 L.Ed.2d, at 50–52]."

The statement in this case cannot reasonably be interpreted as stating as an actual fact that appellant, a corporation, committed or condoned the crime of rape, nor is the statement susceptible of being proved true or false. See *Milkovich.* No reader of the statement "[t]hese claims are the worst that I've seen, short of rape," could have thought that appellee was charging appellant with the commission of a criminal offense. The comments were simply appellee's opinion of the seriousness of the claims of the women he was representing and, as such, they are nonverifiable and express appellee's subjective viewpoint. See, *e.g., Ohio Savings Assn. v. Business First of Columbus, Inc.* (1988), 43 Ohio

App.3d 215, 540 N.E.2d 320. As a result, appellant cannot make a prima facie case for defamation and the trial court correctly granted appellee's motion to dismiss.

The trial court did not err in the manner in which it ruled on appellee's motion. The trial court did not convert the motion to dismiss to a motion for summary judgment, nor did it take into consideration evidentiary materials outside of the complaint in ruling on the motion. Construing the facts presented in the pleadings in a light most favorable to the nonmoving party, appellant, it appears beyond doubt that appellant can prove no set of facts that would entitle it to relief.

Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

## APPENDIX

The article, under the headline "Liqui–Box accused of sexual harassment" stated:

"Three former employees of the Liqui–Box Corporation, including the former equal employment opportunity coordinator, are accusing the Worthington company of sexual harassment and discrimination.

"Three lawsuits filed yesterday in Franklin County Common Pleas Court allege that the boss' son, Samuel N. Davis, repeatedly made unwanted sexual advances, gestures and comments to female employees.

"One suit contends that, despite many complaints, Liqui–Box Chairman Samuel B. Davis refused to allow any investigation into his son's alleged conduct and was himself giving promotions to women he slept with.

"Neither Samuel B. Davis nor his attorneys returned messages left by *The Dispatch* yesterday.

" 'I tried to protect the company from itself, but that didn't work, so now I'm trying to help (those) still working there,' said Teresa Wilson, former manager of human resources and equal opportunity coordinator.

"In her suit, Wilson, of Johnstown, Ohio, said Samuel B. Davis warned her against investigating complaints of sexual harassment.

"She said that when she voiced her objections, she was fired.

"Two other former employees, Jill Booth and Michelle Peace, say in separate suits that Samuel N. Davis, who oversaw a subsidiary operation in the same building, made repeated and non-consensual sexual advances toward them, forcing both to resign.

"The women are demanding an unspecified amount of damages.

"Liqui–Box, with sales of more than $100 million last years, manufactures plastic packaging for liquid products. The company was founded in 1961 and employs about 80 people in its corporate office and adjacent plant, along with an additional 700 workers in facilities across the United States and Europe.

" 'These claims are the worst that I've seen, short of rape,' said attorney David K. Stein, who is representing the women.

"Peace, 23, a former laboratory technician, said in her suit that Samuel N. Davis exposed himself to her, forced his hands up her shirt and otherwise 'attempted to intimidate and coerce (her) into engaging in sexual activity with actual and implied threats of job reprisals or with promises of job advancement and job security.'

"Booth, 25, a former customer service representative, claims in her suit that Samuel N. Davis forced his hands up her shirt, 'physically attacked' her and tried to coerce her into having sexual relations.

"Peace and Booth say Liqui–Box refused to take any action and, as a result, 'created an atmosphere of abuse, intimidation, hostility and offensive behavior.'

"Wilson said she began receiving complaints about Samuel N. Davis shortly after starting her job Aug. 5, 1991. First Wilson's supervisor, then Samuel B. Davis, warned Wilson against taking any action.

" 'He told me that his son had a problem and that he was getting help,' Wilson said.

"Complaints also were made against the elder Davis, she said.

"Wilson claims that, in one case, he was having an affair with his administrative assistant and the woman was rewarded with a promotion, but was eventually fired.

"When the woman filed a discrimination complaint, she was rehired as a consultant and resumed her relationship with Davis.

"According to one of the suits, 'Samuel B. Davis has had sexual relations with other female employees while chairman of Liqui–Box.

" 'These persons have been rewarded with increased benefits and promotions, to the detriment of female employees who do not wish to engage in sexual relations with their supervisors.' "